# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

MICHAEL O'CONNOR,

    Plaintiff,

v.                                                                     Case No. 6:23-cv-1045-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

    Defendant.

_____

## **OPINION AND ORDER**[2]

### **I.  Status**

Michael O'Connor ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of a spine condition and bipolar disorder. Transcript of Administrative Proceedings (Doc. No. 7; "Tr." or "administrative transcript"), filed August 4, 2023, at 82, 94, 388. Plaintiff protectively filed an application for DIB on

---

[1] Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 8), filed August 4, 2023; Reference Order (Doc. No. 10), entered August 4, 2023.

October 28, 2014, alleging a disability onset date of September 23, 2011.[3] Tr. at 334-35. Later, Plaintiff amended the alleged onset date to December 12, 2012. See Tr. at 684. The application was denied initially, Tr. at 82-91, 92, 93, 135-37, and upon reconsideration, Tr. at 94-105, 106, 107, 139-43.

On February 7, 2018, an Administrative Law Judge ("ALJ") held a hearing, during which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. Tr. at 34-59. On May 2, 2018, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision. Tr. at 111-21. Plaintiff sought review of the decision by the Appeals Council and submitted briefs in support of the request. Tr. at 213-15 (request for review), 471-73 (briefs). On October 30, 2019, the Appeals Council granted the request for review and remanded the matter to an ALJ for further proceedings. Tr. at 129-31.

On May 21, 2020, another ALJ held a hearing, during which Plaintiff, represented by counsel, and a VE testified. Tr. at 60-81. On June 11, 2020, the ALJ issued a decision finding Plaintiff not disabled through September 30, 2018, the date Plaintiff was last insured for DIB (the "DLI"). See Tr. at 15-27. Plaintiff sought review of the decision by the Appeals Council and submitted a brief authored by his counsel in support of the request. See Tr. at 5-6 (Appeals Council exhibit list and order), 331 (request for review), 492-93 (brief). On

---

[3] Although actually filed on October 29, 2014, Tr. at 334, the protective filing date is listed elsewhere in the administrative transcript as October 28, 2014, Tr. at 82, 94.

September 7, 2021, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner.

Plaintiff appealed the final decision to this Court. See Complaint (Doc. No. 1), Case No. 6:21-cv-1833-LHP. On April 25, 2022, the Court entered an Order granting the Commissioner's unopposed motion to remand and reversing and remanding the matter for further administrative proceedings. Tr. at 733-34; see Tr. at 735 (Judgment). On August 11, 2022, the Appeals Council remanded the matter to an ALJ consistent with the Court's Order. Tr. at 743-45. The ALJ held a hearing on January 31, 2023,[4] taking testimony from Plaintiff, who remained represented by counsel, and a VE. Tr. at 705-32. By the time of the hearing, Plaintiff was fifty (50) years old. Tr. at 711. On March 27, 2023, the ALJ issued a Decision finding Plaintiff not disabled through the DLI. See Tr. at 684-97. The Appeals Council declined to assume jurisdiction, making the ALJ's Decision the final decision of the Commissioner. On June 5, 2023, Plaintiff commenced this action under 42 U.S.C. § 405(g), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[4] This hearing was held via telephone, with Plaintiff's consent, due to the COVID-19 pandemic. Tr. at 707-08, 748-63, 808-09.

On appeal, Plaintiff argues: 1) "[t]he ALJ failed to apply the correct legal standards" to the opinions of treating physician Sonny Joseph, M.D., Ph.D.; and 2) "[t]he ALJ failed to apply the correct legal standards to [Plaintiff's] testimony regarding his functional limitations." Plaintiff's Brief (Doc. No. 13; "Pl.'s Br."), filed September 1, 2023, at 5, 13 (emphasis omitted). On October 2, 2023, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 14; "Def.'s Mem.") addressing the issues.

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of Dr. Joseph's opinions. On remand, reevaluation of these opinions may impact the Administration's consideration of the remaining issue on appeal. For this reason, the Court need not address the parties' arguments on that issue. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, prior to engaging in the five-step inquiry, the ALJ found Plaintiff "last met the insured status requirements of the Social Security Act on September 30, 2018" (the "DLI"). Tr. at 687. Then, the ALJ proceeded with the inquiry. See Tr. at 687-97. At step one, the ALJ determined that Plaintiff "did

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 5 -

not engage in substantial gainful activity during the period from his amended alleged onset date of December 12, 2012, through his [DLI]." Tr. at 687 (emphasis and citation omitted). At step two, the ALJ found that through the DLI, Plaintiff "had the following severe impairments: lumbar stenosis status post decompression and posterior fusion; degenerative disc disease of the cervical spine; a bipolar disorder; and attention deficit hyperactivity disorder." Tr. at 687 (emphasis and citation omitted). At step three, the ALJ found through the DLI that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 687 (emphasis and citation omitted).

The ALJ determined through the DLI that Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff could] perform light work as defined in 20 CFR [§] 404.1567(b) with these specific restrictions: he could frequently climb ramps and stairs; he could occasionally climb ladders, ropes, and scaffolds; he could frequently balance; he could occasionally stoop, kneel, crouch, and crawl; he needed to avoid concentrated exposure to workplace hazards such as moving machinery, moving mechanical parts, and unprotected heights; he could understand and remember simple instructions; he could maintain concentration, persistence, and pace over the course of a normal eight-hour workday to perform no more than simple, routine, and repetitive tasks; he could occasionally interact with the general public and co-workers.

Tr. at 689 (emphasis omitted).

At step four, the ALJ found that through the DLI, Plaintiff "was unable to perform any past relevant work" as a "greenskeeper" and a "composite job consisting of . . . supervisor – landscaping" and "laborer – landscaping." Tr. at 695 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("46 years old . . . on the DLI"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found through the DLI that "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," Tr. at 695, such as "Marker," "Housekeeper/cleaner," and "Router," Tr. at 696 (some emphasis and citation omitted). The ALJ concluded Plaintiff "was not under a disability . . . at any time from December 12, 2012, the alleged onset date, through September 30, 2018, the [DLI]." Tr. at 697 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)

(quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff challenges the ALJ's analysis of the opinions by treating physician Dr. Joseph. Pl.'s Br. at 5-13. According to Plaintiff, "[t]he ALJ failed to apply the correct legal standards to Dr. Joseph's opinion[s] and made findings not supported by substantial evidence." Id. at 7; see id. at 12. Responding, Defendant argues the ALJ properly weighed Dr. Joseph's opinions and made findings that are supported by substantial evidence. Def.'s Mem. at 8-14.

"Medical opinions[6] are statements from [physicians or other] acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502(a).[7]

The Regulations establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of

---

[6] On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff protectively filed his claim before that date, the undersigned cites the Rules and Regulations that are applicable to the date the claims were filed, as well as Eleventh Circuit authority interpreting those Rules and Regulations.

[7] For claims filed on or after March 27, 2017, acceptable medical sources also include licensed audiologists, licensed Advanced Practice Registered Nurses, and licensed Physician Assistants. 20 C.F.R. § 404.1502(a)(6)-(8).

Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)).

The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. § 404.1527(c)(2)-(5); see also 20 C.F.R. § 404.1527(f); Walker v. Soc. Sec. Admin., Comm'r, 987 F.3d 1333, 1338 (11th Cir. 2021) (citation omitted); McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. See 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any

- 10 -

physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

At issue here are two opinions authored by Dr. Joseph: one during the pendency of the original administrative proceedings and one after the matter was remanded by this Court. First, Dr. Joseph completed a Treating Mental Source Mental Status Report on April 30, 2015. Tr. at 568-69. According to Dr. Joseph, Plaintiff's diagnosis was "Bipolar Disorder, depressed." Tr. at 568. Plaintiff's mood and affect were depressed and anxious. Tr. at 568. Plaintiff suffered from "Psychomotor Retardation" as a result of the disorder. Tr. at 568. Plaintiff's "capacity for understanding and memory, sustained concentration [and] persistence, social interaction, [and] adaptation are impaired due to the severity of his condition." Tr. at 569. Dr. Joseph opined Plaintiff would not be capable of sustaining work activity for eight hours a day, five days a week "due to the severity of his symptoms caused by his condition." Tr. at 569. According to Dr. Joseph, Plaintiff would be competent to manage his benefits independently. Tr. at 569.

Dr. Joseph's second opinion starts with a form dated January 30, 2023 and containing a series of questions to which he was asked to reply "yes or no." Tr. at 869-70. Opining as to the time period from December 12, 2012, the date Dr. Joseph started treating Plaintiff, to October 1, 2018 the day after the DLI, Tr. at 869, and then again through the date of the opinion, Tr. at 870, Dr. Joseph affirmed as follows.

Plaintiff would have an inability to concentrate during the day to perform even simple, routine tasks for greater than fifteen percent of the time, and this would occur at least three days per week. Tr. at 869. Beyond the customary breaks, Plaintiff would need to take at least one additional break of thirty minutes or more. Tr. at 869. Plaintiff would not be able to interact appropriately with the public or get along with coworkers or peers without distracting them or exhibiting behavioral extremes for greater than fifteen percent of the time, at least three days per week. Tr. at 869. Plaintiff would not be able to work in coordination with or proximity to others without being distracted by them for greater than fifteen percent of the time, at least three days a week. Tr. at 869. Plaintiff would not be able to understand or respond appropriately to criticism from supervisors for greater than fifteen percent of the time, at least three days a week. Tr. at 869. Plaintiff will be absent from work three or more days per month. Tr. at 869. Plaintiff not be able to complete a normal workday and workweek without frequent interference arising from psychological stressors.

Tr. at 869. The form advised Dr. Joseph that "the court has found that reading progress notes has been difficult. Please provide additional comments providing the basis of these findings." Tr. at 870. In response, Dr. Joseph wrote, "Please honor accommodations in good faith." Tr. at 870.

Appearing in the administrative transcript just after the January 30, 2023 form is a letter from Dr. Joseph dated January 28, 2023 with the subject line: "Re: Accommodations" (a likely reference to his hand written note in the form that, for whatever reason, is dated two days later). Tr. at 871. In the letter, Dr. Joseph writes that Plaintiff "has been under [his] treatment since December 12, 2012 with a diagnosis of Bipolar Disorder, Anxiety, Major Depression, and Attention Deficit Disorder." Tr. at 871. According to Dr. Joseph,

> [Plaintiff's] symptoms include depression, apathy, easily overwhelmed with minor stress, irritability, social anxiety, panic attacks, agitation, anger, anxiety, lack of sleep, minimal socialization, decreased concentration, inability to focus, distractibility, decreased attention, difficulty completing tasks, procrastination, forgetfulness, fidgeting, and poor reading comprehension and recall.

Tr. at 871. The current medications were listed: "Seroquel," "Atarax," "Lithium," "Inderal LA," "Lexapro," "Depakote ER," "Abilify," and "Adderall." Tr. at 871. Dr. Joseph indicated that over the years, he has "provided more than sufficient evidence that [Plaintiff] has severe symptoms from his chronic, endogenous conditions, with a poor prognosis for further improvement." Tr. at

871. Dr. Joseph "recommend[ed] that [Plaintiff] receive disability benefits of long term accommodations." Tr. at 871. Dr. Joseph concluded that Plaintiff "is currently unable to work full time due to the severity of the exacerbation of his symptoms from his conditions, requiring these accommodations to stabilize his conditions, as a part of his treatment plan, indefinitely." Tr. at 871.

Oddly, neither the ALJ, nor the parties now, discuss the January 28, 2023 letter from Dr. Joseph (even though it is in the same exhibit (16F) as the January 30, 2023 "form" opinion). The ALJ's failure to acknowledge or assign weight to the opinion contained therein frustrates judicial review to the extent that the matter must be reversed and remanded for further consideration. All along, the legibility of Dr. Joseph's treatment notes has been an issue.[8] Knowing this, Plaintiff's counsel sent Dr. Joseph the January 30, 2023 form in which he was advised that "reading the progress notes has been difficult" and was asked to "provide the basis of [his] findings." Tr. at 869-70. Dr. Joseph's letter, dated within days of the form, appears to summarize his treatment over the course of many years and explain the severity of Plaintiff's symptoms,

---

[8] The undersigned can decipher a word here and there from the notes during the relevant time period, but they are extremely difficult to read on the whole. See, e.g., Tr. at 561 (December 12, 2012 note indicating Plaintiff "reports feeling better with no side effects" and has had "manic episodes in the past") 566 (note likely from late 2014 indicating Plaintiff was "unable to keep a job" and was "easily overwhelmed with minor stress"), 616-20, 675-79 (documenting visits, some sort of medication adjustments, and short notes such as increased depression, feeling better, etc.)

together with the multiple medications that are necessary to attempt to stabilize his conditions. See Tr. at 871.

In summarizing the medical evidence, the ALJ found Dr. Joseph's notes "are difficult to read" but "not illegible," Tr. at 691 (contrary to another ALJ finding at least later notes were "illegible", Tr. at 117). The ALJ, however, made limited factual findings about what the notes actually contain. Tr. at 691-92. In discounting the 2015 opinion, the ALJ wrote that Dr. Joseph "provided no specifics to support the opinion." Tr. at 692. It appears, therefore, that the specifics contained in the January 28, 2023 letter about symptoms and medications are material to the ALJ's resolution of the matter, but the letter was overlooked. Remand is required for reconsideration of Dr. Joseph's opinions, including the January 28, 2023 letter.

Plaintiff requests that the Court impose a time limitation on the Administration of 120 days to complete the administrative process, given the number of years that have passed without final resolution of the claim. Pl.'s Br. at 17. The undersigned declines to order completion in a set amount of time, but urges the Administration to resolve this matter as soon as practicable.

## V.   Conclusion

In light of the foregoing, it is

**ORDERED**:

1.   The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)   Reconsider the entirety of Dr. Joseph's opinions, including the letter dated January 28, 2023;

(B)   If appropriate, address Plaintiff's other argument in this appeal; and

(C)   Take such other action as may be necessary to resolve this claim properly.

2.   The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 20, 2024.

_____
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record